UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

DEBORAH SCHLATER,

                        1:18-cv-09778-NLH-KMW

        Plaintiff,

     v.                   **OPINION**

ARTHRITIS, RHEUMATIC & BACK
DISEASE ASSOCIATES, P.A.,

        Defendant.

_____

**APPEARANCES**:

DAVID M. EISEN
MICHAEL D. HOMANS
HOMANS PECK LLC
2 PENN CENTER
1500 JOHN F. KENNEDY BOULEVARD
SUITE 520
PHILADELPHIA, PA 19102

     *On behalf of Plaintiff Deborah Schlater*

LAWRENCE BRENT BERG
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
15000 MIDLANTIC DRIVE
SUITE 200
PO BOX 5429
MT. LAUREL, NJ 08054

     *On behalf of Defendant Arthritis, Rheumatic & Back Disease*
     *Associates, P.A.*

**HILLMAN**, District Judge

    Plaintiff Deborah Schlater filed this suit against her

former employer, Defendant Arthritis, Rheumatic & Back Disease

Associates, P.A. ("ARBDA"), alleging a variety of violations of

the Family and Medical Leave Act ("FMLA") and New Jersey's Law

Against Discrimination ("NJLAD").  Defendant subsequently moved

for summary judgment, (ECF No. 33), which Plaintiff has opposed.

(ECF No. 38).  For the reasons expressed below, Defendant's

motion will be denied.

## Background

The Court takes its facts from the parties' statements of

material fact submitted pursuant to Local Civil Rule 56.1(a).

Defendant is a rheumatology practice with six offices located

throughout New Jersey.  On February 27, 2017, Defendant hired

Plaintiff as Clinical Operations Director.  (ECF No. 33-2 ("Def.

SOMF") at ¶ 3).

Plaintiff suffers from a debilitating neurological

condition, which began to worsen in the fall of 2017 until, by

January of 2018, it prevented Plaintiff from standing, sitting

down, or walking for long periods of time and caused Plaintiff

to begin walking with a cane.  (ECF No. 38-2 ("Pl. Supp. SOMF")

at ¶¶ 16-17).  That fall, ARBDA's Managing Partner, Dr. Adrienne

Hollander, treated Plaintiff for her disability and worsening

symptoms, (Id. at ¶ 15),[1] and by January of 2018, ARBDA's CEO,

_____

[1] Defendant "Denie[s] as stated" this statement of fact, but cites
to no evidence in the record to dispute the statement or the
supporting evidence Plaintiff has cited.  Accordingly, the Court
will accept this fact as admitted for the purposes of this
motion.  See Local Civil Rule 56.1(a) (providing that the movant
shall respond to each paragraph of a supplemental statement of
disputed material facts by "indicating agreement or disagreement
and, if not agreed, stating each material fact in dispute and

Director of Human Resources, and other employees were aware of Plaintiff's disability.  Id. at ¶¶ 16-17.  During this time period, Plaintiff began working from home on certain days, and began coming to work earlier and leaving earlier than Defendant's standard office hours so as to avoid getting stuck in traffic; the parties dispute whether these practices were related to Plaintiff's disability.  (Def. SOMF at ¶ 7; Pl. Supp. SOMF at ¶ 27).

Plaintiff continued these practices until a January 9, 2018 meeting with ARBDA CEO Charles Haberkern and Director of Human Resources Elaine Piontkowski.  In that meeting, Haberkern informed Plaintiff that, going forward, she was no longer allowed to work from home on any days or to work adjusted hours. Instead, she was required to be in the office during normal office hours, and if she could not make it to the office, she would have to take a vacation day.  Haberkern stated that this decision was being made because Plaintiff's job as Director of Operations could not be done remotely.  (Def. SOMF at ¶ 14).

Three weeks later, on February 1, Plaintiff requested medical leave by email to Piontkowski.  The email attached a doctor's note excusing Plaintiff from work "indefinitely" as she was "in the progressive of being evaluated for" a condition

_____

citing to the affidavits and other documents submitted in connection with the motion....").

named "progressive lumbosacral radiculopathy," which rendered her unable to drive or sit for more than thirty minutes.  The email also stated that Plaintiff had a further appointment with a neurosurgeon upcoming on February 5.  (Def. SOMF ¶ 5).

On February 5, Plaintiff informed Piontkowski by email that the neurosurgeon had referred her to another specialist, but that she did not yet have a return-to-work date:

> "On a personal note, the neurosurgeon referred me for more imaging tests and for a separate specialist consult.  I have to wait for a preauth and an appt with the specialist. So I don't have a specific return date, and I wish I did. But I'm still unable to walk, sit, stand, drive for [sic] more than 10 minutes. The cane no longer helps as both my feet are in constant pain." (Pl. Ex. 19).

Plaintiff then emailed Piontkowski again on February 12, informing her of health insurance related delays in her testing and treatment, stating that she would keep Piontkowski updated on her status, and requesting that Piontkowski let Plaintiff know "[i]f you have any questions or if I need to know anything regarding my time out of work." (Pl. Ex. 20).  The next day, February 13, Plaintiff followed up with a specific request related to the FMLA and extended leave:

> "Can you please advise me on what you need from me for my current, extended leave, or what, if anything, I need to do at this point, e.g. FMLA form, physician attestation? Because I'm presently physically unable to work, I want to make certain I'm following ARBDA and/or state/federal requirements for extended leave or FMLA." (Pl. Ex. 21).

Piontkowski responded, ignoring Plaintiff's requests regarding information on FMLA leave, and informing her that ARBDA did not offer extended leave and that she had no paid time off remaining.  The email further requested, for the first time, that Plaintiff provide ARBDA an expected return-to-work date by 4:00 PM on February 19, six days later, but did not state that failure to do so could result in termination.  (Pl. Supp. SOMF at ¶ 60, 74; Pl. Ex. 21).  That same day, Plaintiff again requested information about FMLA leave; in her response, Piontkowski, for the second time, did not acknowledge the request, providing only information regarding state benefits. See (Pl. Supp. SOMF at ¶¶ 61-62; Pl. Ex. 21).[2]

Three days later, on February 16, Plaintiff emailed both Piontkowski and Haberkern, noting that her doctor was in the process of trying to get her seen for future testing "asap" and stating that "[a]s soon as I have more conclusive diagnostic and treatment information I will let you know, and hopefully

---

[2] Defendant again "Denie[s] as stated" this description of the relevant email conversation, but cites to no evidence in the record showing that Defendant addressed Plaintiff's requests for FMLA leave, that Defendant had previously mentioned the need for a return date, or that Defendant warned Plaintiff regarding the potential consequences.  Defendant's response to these paragraphs, and many other paragraphs, of Plaintiff's supplemental statement of facts similarly includes legal argument regarding the sufficiency of Plaintiff's evidence, which is prohibited by Local Civil Rule 56.1(a). For these reasons, the Court will accept these facts as admitted for the purposes of this motion.

that info will provide me with an expected return date." (Pl. Ex. 23).

The February 19 deadline came and passed with no further update or estimated return date provided by Plaintiff.  Finally, the following day, February 20, Piontkowski contacted Plaintiff to set up a phone call between the two of them and Haberkern. On that call, Haberkern informed Plaintiff that because she had failed to provide the return date by the deadline provided by Piontkowski, Defendant had terminated her employment.  (Def. SOMF at ¶ 21; Pls. Supp. SOMF at ¶ 77).

Plaintiff thereafter filed the operative Amended Complaint, alleging five separate yet related claims: (1) FMLA retaliation; (2) interference with Plaintiff's FMLA rights; (3) disability discrimination under the NJLAD; (4) NJLAD failure to accommodate; and (5) NJLAD retaliation.  (ECF No. 3).

## Discussion

### A. Subject Matter Jurisdiction

The Court has original federal question jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and has supplemental jurisdiction over the New Jersey state law claims pursuant to 28 U.S.C. § 1367(a).

### B. Legal Standards Governing Motions for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including

6

depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323 (("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

7

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

   C. **Analysis**

      1. **Plaintiff's FMLA Claims**

   "An employer may be sued under the FMLA for interfering with an employee's FMLA rights, as well as for retaliating against an employee who exercises rights under the FMLA." Caruso v. Bally's Atlantic City, No. 16-05021 (NLH/KMW), 2019 WL 4727912, at *5 (D.N.J. Sept. 27, 2019) (citing Lupyan v. Corinthian Colleges Inc., 761 F.3d 314, 318 (3d Cir. 2014)). "[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Id. (quoting Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009)).

Plaintiff asserts both an FMLA retaliation and an FMLA interference claim.  While Plaintiff addresses them jointly in her complaint, the Court will address each claim separately because they are governed by differing legal standards.

### a. FMLA Retaliation Claim

Plaintiff first alleges that her termination constitutes illegal retaliation against her for attempting to invoke her FMLA rights.  (ECF No. 3 at ¶ 49).  "FMLA retaliation claims are analyzed under the lens of employment discrimination law and claims based on circumstantial evidence are evaluated under the burden-shifting framework" of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (U.S. 1973). Fiorentini v. William Penn Sch. Dist., 665 Fed. App'x 229, 236 (3d Cir. 2016) (citing Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012)).

Under the McDonnell Douglas framework, "a plaintiff must first establish a prima facie case of discrimination.  If the plaintiff succeeds, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination." Capps v. Mondelez Global, LLC, 847 F.3d 144, 152 (3d Cir. 2017) (quoting Ross v. Gilhuly, 755 F.3d 185, 193 (3d Cir. 2014)).

"To state a prima facie case for FMLA retaliation, a plaintiff must show that: (1) she invoked her FMLA rights; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the plaintiff's exercise of her FMLA rights." <u>Fiorentini</u>, 665 Fed. App'x at 236.  Defendant does not dispute that Plaintiff has satisfied the first two elements, since she expressed her intent to take FMLA leave and was terminated.  Instead, it argues that Plaintiff cannot establish that her termination was causally related to her invoking of the FMLA.

To establish a *prima facie* case of causation, Plaintiff must "point to evidence sufficient to create an inference that a causative link exists between her FMLA leave and her termination." <u>Lichtenstein</u>, 691 F.3d at 307.  "Where the 'temporal proximity' between the protected activity and adverse action is 'unduly suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment." <u>LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n</u>, 503 F.3d 217, 232 (3d Cir.2007) (internal quotations omitted).  When the temporal proximity is insufficient, the court asks whether "the proffered evidence, looked at as a whole, may suffice to raise the inference." <u>Id</u>. (quoting <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 284 (3d Cir. 2000)).

The Court finds that Plaintiff has met her burden to show causation at this stage in the litigation.  Plaintiff's termination occurred six days after first expressing her intention to invoke her right to FMLA leave, and one week prior to the date she would have become eligible for twelve weeks of FMLA-protected leave.  The close temporal proximity between not only her request and her firing, but also her firing and the date on which she would have become eligible, is "unduly suggestive" and creates an inference of causality.  Nuness v. Simon & Schuster, Inc, 325 F. Supp. 3d 535, 563 (D.N.J. 2018) (finding two weeks between protected activity and termination was unduly suggestive).

Even were it not, evidence shows that ARBDA's first request for a return to work date came in an email directly responding to Plaintiff's request for information about FMLA leave, and did not tell Plaintiff that failure to provide a date could result in termination.  (Pls. SOMF at ¶ 60).  Piontkowski's response email further ignored Plaintiff's request for information about FMLA, and when Plaintiff followed-up a second time asking that she be provided guidance on the FMLA leave policy, Piontkowski again ignored the request and provided only information on state benefits.  (Pl. Ex. 21).  This evidence is more than sufficient to demonstrate a factual dispute as to the element of causation, and therefore a prima facie case of retaliation.

11

The burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for Plaintiff's termination.  Capps, 847 F.3d at 152.  "This second step of McDonnell Douglas does not require that the employer prove that the articulated legitimate, nondiscriminatory reason was the actual reason for the adverse employment action. Instead, the employer must provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons."  Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (citing Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

Defendant presents Plaintiff's failure to provide a return to work date by the February 19 deadline as the legitimate, nondiscriminatory reason for her termination.  According to Defendant, Plaintiff "didn't respond to ARBDA's inquiries" regarding a return date, and "[h]ad Plaintiff simply provided ARBDA with a timeframe for her return, she would not have been terminated."  (ECF No. 33-1 at 13).  This failure, Defendant argues, "depriv[ed] ARBDA of its ability to make critical decisions regarding staffing adjustments and reassignment of duties."  (ECF No. 42 at 25).  Haberkern, Dr. Hollander, and Piontkowski all testified that the sole reason for Plaintiff's termination was her failure to provide a return date by the February 19 deadline so ARBDA could begin "plan[ning] to move

12

forward" with staffing and planning, (Defs. SOMF at ¶¶ 10-11),
and the parties agree that Haberkern told Plaintiff on the
February 20 call that her failure to provide a return date was
the reason for her termination.  As Defendant's burden at this
stage is "minimal," it has sufficiently alleged a legitimate,
nondiscriminatory reason.  Lichtenstein, 691 F.3d at 302.

Finally, the burden shifts one last time back to Plaintiff
to demonstrate that Defendant's proffered nondiscriminatory
reason was pretext.  To do this, Plaintiff "must demonstrate
such weaknesses, implausibilities, inconsistences,
incoherencies, or contradictions in the employer's proffered
legitimate reasons for its action" to allow a reasonable
factfinder to determine that the reasons were simply pretext for
discriminatory or retaliatory action.  Fuentes, 32 F.3d at 765.

Here, Plaintiff has presented more than sufficient evidence
for a factfinder to reasonably make that determination.  First,
as described above, Plaintiff has shown not only the unduly
suggestive timing of her termination, but also the fact that
Defendant did not request a return-to-work date until
immediately after Plaintiff first raised the possibility of
taking FMLA leave, and never mentioned that the failure to
provide a return date by the deadline could result in
termination.  Similarly, Defendant's claim that Plaintiff
"didn't respond to ARBDA's inquiries" regarding a return date is

supported by no citation to the record; in fact, this claim is contradicted by the available evidence, which shows that on February 16, three days after the request and three days before ARBDA's chosen deadline, Plaintiff emailed Piontkowski and Haberkern to inform them that her attempt to seek a diagnosis had been delayed by insurance issues, but she hoped to have a return date soon and would keep them updated.  (Pl. Ex. 23).

At the same time, Defendant itself had failed to respond to multiple requests from Plaintiff for information regarding FMLA leave, despite the fact that they are required to "notify the employee of the employee's eligibility to take FMLA leave within five business days" of the request,  29 C.F.R. § 825.300(b)(1), and the fact that her FMLA eligibility was apparently already on the minds of ARBDA's Executive Committee.  Although Plaintiff had not raised the possibility of taking FMLA leave until her email to Piontkowski on February 13, contemporaneous notes and deposition testimony show that ARBDA's Executive Committee had discussed her eligibility for FMLA leave in a meeting eleven days earlier on February 2.  Handwritten notes taken at the meeting by Piontkowski include the comments "Feb 27th" and "3 month" under Plaintiff's name — which a factfinder could reasonably determine referred to the undisputed date on which Plaintiff would become eligible for FMLA leave and the amount of legally-protected leave the FMLA would grant her at that time.

14

(Pl. Ex. 18; Pl. Ex. 4 at 133:6-13, 21-24).  Dr. Hollander confirmed that Plaintiff's upcoming eligibility for FMLA leave was discussed at the February 2 meeting.  (Pl. Ex. 13 at 183:20-185:13).  This lack of communication on a known issue further coincides with Plaintiff's testimony that, as her disability worsened in the months leading up to her request and termination, her treatment at the hands of her managers had changed and become more hostile.  (Pl. Supp. SOMF at ¶¶ 34-41).[3]

     In fact, despite Defendant's claim that it terminated Plaintiff so it could move forward with planning and staffing, evidence in the record shows that ARBDA had reassigned her job duties on the first day of her initial leave, February 1, 2018, and those reassignments stayed in place for almost a full year. (Pl. Ex. 9 at 151:15-152:9) (Haberkern testimony stating that

---

[3] Defendant argues that a number of allegations made by Plaintiff, including this one, are "self-serving bare assertions [and] conclusory allegations" that cannot suffice to establish genuine issues of material fact sufficient to defeat summary judgment.  (ECF No. 42 at 21-23).  Defendant is correct that "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d. Cir. 2009). However, "self-serving affidavits pointing to specific facts can create a genuine issue of material fact sufficient to survive summary judgment." Paladino v. Newsome, 885 F.3d 203, 209 (3d Cir. 2018) (citing Kirleis, 560 F.3d at 161-62).  As such, the Court will consider those self-serving statements that sufficiently point to specific facts.  Here, Plaintiff describes specific behavior by Defendant and changes in her treatment, all matters within her personal knowledge; accordingly, the Court considers this testimony in its analysis.

ARBDA did not hire the new employee who took on Plaintiff's duties until 2019).  Finally, Plaintiff also points to evidence, in the form of deposition transcripts, that ARBDA's Executive Committee members had contradicted each other regarding the exact reason for Plaintiff's termination: despite Defendant's claim that Plaintiff was fired purely for her failure to provide a return date by February 19, Dr. Michael Schuster testified that he believed Plaintiff was terminated because "she wasn't doing the job that we hired her for," was "having some difficulty with the standard operating procedure documents," and wasn't "reaching out to other offices to make sure that they were following the procedures and developing the procedures of the Voorhees office."  (Pl. Ex. 28 at 21:15-18, 22:23-23:11).

Taken as a whole and viewed in the light most favorable to the nonmovant, the evidence in the record is sufficient to allow a reasonable factfinder to decide that Defendant's proffered nondiscriminatory reason was in fact pretext.  Accordingly, Plaintiff has met her burden at this stage of the litigation, and Defendant's motion for summary judgment of her FMLA retaliation claim will be denied.

### b. **FMLA Interference Claim**

Plaintiff also claims that her termination constituted illegal interference with her FMLA rights.  (ECF No. 3 at ¶ 49).  The FMLA prohibits an employer from "interfer[ing] with,

16

restrain[ing], or deny[ing] the exercise of or the attempt to
exercise," an employee's right to FMLA-covered leave.  29 U.S.C.
§ 2615(a)(1).  To prevail on her interference claim, Plaintiff
need only demonstrate that "(1) she was entitled to take FMLA
leave on [the date it was sought for], and (2) [the employer]
denied her right to do so." Lichtenstein, 691 F.3d at 312
(citing Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d
Cir. 2005)).  Importantly, "[b]ecause the FMLA [interference
claim] is not about discrimination, a McDonnell Douglas burden-
shifting analysis is not required."  Capps, 847 F.3d at 155
(quoting Sommer, 461 F.3d at 399).

Here, Plaintiff has plainly carried her burden at this
stage in the litigation.  Defendant does not dispute that it is
an employer subject to the FMLA, that Plaintiff communicated her
desire to take FMLA-protected leave, or that Plaintiff was
terminated.  Instead, Defendant presents a series of other
arguments.

First, it claims that "Plaintiff was not eligible for FMLA
leave, having been employed for less than a year." (ECF No. 33-
1 at 6).  However, as Plaintiff notes, multiple courts in this
district faced with this question have previously found that "a
pre-eligible employee ha[s] a cause of action if an employer
terminates her in order to avoid having to accommodate that
employee with rightful FMLA leave rights once that employee

17

becomes eligible." <u>Shreve v. New Jersey Motor Vehicle Comm'n</u>,
Case No. CV-157957-MAS-LHG, 2016 WL 5334661, at *4 (D.N.J. Sept.
22, 2016) (quoting <u>Corral v. Hersha Hosp. Mgmt., Inc.</u>, Case No.
12-CV-02375 DRD, 2012 WL 4442666, at *9 (D.N.J. Sept. 24,
2012)); <u>see</u> <u>also</u> <u>Corral</u>, 2012 WL 4442666 at *10 ("[P]re-eligible
employees are entitled to covered rights and attempts to
exercise such rights, including the right to foreseeable future
leave once eligibility is gained."). The Court reaches the same
conclusion.

Defendant next argues that summary judgment should be
granted because the "FMLA does not provide employees with a
right against termination for a reason other than interference
with rights under the FMLA." (ECF No. 33-1 at 23-25).
Defendant argues that Plaintiff's termination was unrelated to
interference with her FMLA rights and instead was because she
failed to provide a return to work date by the deadline set by
Defendant and thereby "depriv[ed] ARBDA of its ability to make
critical decisions regarding staffing adjustments and
reassignment of duties." (ECF No. 42 at 25).

However, the Court finds that sufficient evidence has been
presented to demonstrate a genuine dispute of material fact as
to the actual reason for Plaintiff's termination. As described
above in the Court's analysis of Plaintiff's retaliation claim,
evidence in the record shows (1) the timing of her termination,

18

six days after giving notice of her intent to take FMLA leave
and one week prior to her becoming eligible, (2) Defendant's
failure to acknowledge or respond to her request for information
regarding FMLA leave, despite having discussed it in an
Executive Committee meeting prior to her request, and (3) that
Defendant never provided her with the FMLA information they are
statutorily required to provide within five business days of a
request, or informed her that termination was a potential
consequence of failing to provide a return date by the deadline.
The Court finds this evidence is sufficient to present a genuine
factual dispute as to the reason for Plaintiff's termination.

Finally, Defendant very briefly argues that it has not
violated the FMLA because Plaintiff would not have been able to
return to work at the end of the twelve weeks.  (ECF No. 33-1 at
5; ECF No. 42 at 25).  However, despite its argument that "the
record amply supports" this claim, the only evidence Defendant
points to is the fact that Plaintiff's surgeon "did not
indicate" that she was medically cleared to return to work in
April 2019 — a point entirely undermined by the fact that the
surgeon's notes do not reference Plaintiff's ability to work one
way or the other.  (Def. Ex. P).  Accordingly, Defendant has not
supported its argument with evidence in the record, and has not
met its burden to demonstrate the lack of a factual dispute
regarding whether Plaintiff would have been able to return to

work.  Defendant's motion for summary judgment of Plaintiff's
FMLA interference claim will therefore be denied.

### 2. **Plaintiff's NJLAD Claims**

Plaintiff also brings three related claims under the NJLAD,
for disability discrimination, failure to accommodate, and
retaliation.  The Court will address these claims in that order.

### a. **Disability Discrimination Claim**

Plaintiff's first NJLAD claim is that Defendant
discriminated against her by firing her because of her
disability.  To state a *prima facie* case of discriminatory
discharge under the NJLAD, Plaintiff must demonstrate that: (1)
she is a member of a protected class; (2) she was otherwise
qualified and performing the essential functions of the job; (3)
she was terminated; and (4) the employer thereafter sought
similarly qualified individuals for the job who were not members
of her protected class.  Joseph v. New Jersey Transit Rail
Operations Inc., 586 Fed. Appx. 890, 892 (3d Cir.2014) (citing
Victor v. State, 203 N.J. 383, 4 A.3d 126, 145 (2010)).  Upon
the establishment of a *prima facie* case, NJLAD discrimination
claims proceed under the same McDonnell Douglas burden-shifting
framework described above.  Viscik v. Fowler Equip. Co., 800
A.2d 826, 833 (N.J. 2002).

Defendant's only argument regarding Plaintiff's *prima facie*
case is that Plaintiff has not demonstrated that she was

qualified and able to perform the job to ARBDA's expectations,
because she "was unable to perform the essential functions of
the job." (ECF No. 33-1 at 10). Defendant's argument, at its
core, is that "[t]he essential functions of her job required
that Plaintiff be on site" during standard office hours, and
accordingly Plaintiff could not adequately perform her job if
she needed to work from home at times or work adjusted hours.
(ECF No. 42 at 30-31); see also (ECF No. 33-1 at 8-11).

While "consideration [is] given to 'the employer's judgment
as to what functions of a job are essential,'" the assessment as
to what constitutes an essential function is a factual
determination made on a case-by-case basis. Melton v. Resorts
Int'l Hotel, Inc., No. 11-6449, 2014 WL 5341929, at *4 (D.N.J.
Oct. 20, 2014). Although Defendant's claim that Plaintiff's
presence in the office during ARBDA's standard office hours was
an essential function of her position is accordingly due some
weight in the Court's analysis, a review of the record shows
that Plaintiff has put forth sufficient contradictory evidence
to show a genuine factual dispute on this issue.

In support of its argument, Defendant relies on the
deposition testimony of ARBDA CEO Charles Haberkern, Managing
Partner Dr. Adrienne Hollander, and Partner Dr. Arielle Silver,
who all stated their opinion that Plaintiff's job could not be
adequately performed out of office or during non-standard hours,

21

as well as the testimony of Dr. Silver and notes of Haberkern
stating that other employees had complained that Plaintiff was
not in the office.  (Def. SOMF at ¶ 15-17); (Def. Ex. I).

However, the testimonies of Haberkern and Dr. Silver also
undercut ARBDA's argument on this point.  Haberkern himself
acknowledged that many of Plaintiff's job duties could be done
outside of the office and outside of normal business hours, (Pl.
Ex. 9 at 65:11-68:21), and Dr. Silver admitted twice that parts
of Plaintiff's job could be done remotely.  (Def. SOMF at ¶ 17).
In fact, Dr. Silver went even further, suggesting unprompted
that if sitting in traffic was difficult for Plaintiff due to
her disability, "she could have just come in earlier and left
the times there wasn't traffic."  (Def. Ex. F at 55:5-56:3).
While Dr. Silver went on to suggest that Plaintiff should have
stayed later until traffic had died down rather than leave
early, her testimony at the very least contradicts Defendant's
argument that anything other than standard office hours would be
unworkable for Plaintiff's position.

Additional evidence in the record supports Plaintiff's
argument.  The original job description for Plaintiff's position
as drafted by ARBDA does not mention any requirement for face-
to-face interactions or that she be "on site" during all
business hours, and none of the "Essential Functions" listed are
described in ways that would imply they could not be done by an

22

individual working from home at times.  (Def. Ex. B).  See
Bisker v. GGS Info. Servs., Inc., No. 1:cv-07-1465, 2010 WL
2265979, at *4 (M.D. Pa. June 2, 2010)  (holding that genuine
dispute existed when job "description [did] not specify that
face-to-face interaction is either necessary or imperative").
While the description of the "Physical Environment and Working
Conditions" suggests that in-person presence and an ability to
sit or stand for long periods of time and lift objects are
important, it also explicitly states that "[r]easonable
accommodations may be made to enable individuals with
disabilities to perform the essential functions."  (Def. Ex. B).

     Plaintiff, based on her own experience, attests that
"[m]ore than half of [her] job could be done on her computer
from home or before or after work hours," (Pl. Supp. SOMF at ¶
12), and that, contrary to the assertions of Defendant, she "was
not a 'floor manager' directing the work of others, but a
higher-level director responsible for policy, planning and
process," all of which could be done remotely or outside of
standard office hours.  (ECF No. 38 at 17 (citing Pl. Ex. 11 at
¶ 4)).  Plaintiff also oversaw operations and personnel at six
different sites, meaning that her oversight of employees outside
of the office she was based in was often done remotely.  (Pl.
Supp. SOMF at ¶ 11).  Finally, Plaintiff testified that she had
frequently worked from home over the previous eleven months with

the permission of her former supervisor Brian Smith and Betty Grimmett – the latter directly due to her disability – and had received positive feedback and a bonus for her work.  (Pl. Supp. SOMF ¶¶ 4-7, 12-13).

Unlike other cases in which courts in this circuit have previously found that in-person attendance was an essential function of the job, Plaintiff has put forth sufficient evidence to allow a reasonable factfinder to decide that she could perform the essential functions of her job while working adjusted hours and from home part time.  See, e.g. Miller v. University of Pittsburgh Medical Center, 350 Fed. Appx. 727 (3d Cir. 2009) (holding that position that required employee to assist with surgical procedures necessarily required her to be present at the hospital); Marsh v. GGB, LLC, No. 1:17-cv-6939-NLH-KMW, 2020 WL 1951643, at *7 (D.N.J. Apr. 23, 2020) (holding that plaintiff's job, which involved "physically handling machinery in the manufacturing process," required him to be in the factory).  The Court accordingly finds that Plaintiff has met her burden of demonstrating a *prima facie* case.

With Plaintiff's *prima facie* case shown, the analysis moves into same McDonnell Douglas framework applied above.  Shinn v. FedEx Freight, Inc., 783 Fed. Appx. 229, 234 (3d. Cir. 2019).  As both sides' arguments on the next two steps of this analysis are identical to their arguments for the FMLA retaliation claim,

24

the Court's analysis is similarly identical.  Although Defendant

has proffered a legitimate, nondiscriminatory reason for the

termination, Plaintiff's failure to provide a return date,

Plaintiff has similarly provided sufficient evidence to

demonstrate the existence of a genuine dispute of material fact

as to whether Defendant's reason was pretext.  Accordingly,

Defendant's motion for summary judgment on Plaintiff's NJLAD

discrimination claim will be denied.

### b. NJLAD Failure to Accommodate Claim

Plaintiff also claims that Defendant violated the NJLAD by

failing to reasonably accommodate her disability.  The NJLAD

requires employers to "make a reasonable accommodation to the

limitations of an employee [] who is a person with a disability,

unless the employer can demonstrate that the accommodation would

impose an undue hardship."  Stewart v. County of Salem, 274 F.

Supp. 3d 254, 260 (D.N.J. 2017) (quoting N.J. Admin. Code tit.

13, § 13-2.5(b)).  "To prevail on a failure to accommodate

claim, a plaintiff must first present the *prima facie* elements

required in any disability discrimination claim."  Fitzgerald v.

Shore Memorial Hosp., 92 F.Supp.3d 214, 237 (D.N.J. 2016).

As shown above in the Court's NJLAD discrimination claim

analysis, Plaintiff has presented evidence sufficient to

establish the basic *prima facie* discrimination elements.  Once a

plaintiff has established those elements, she must then "show

25

that [her] employer failed to participate in the interactive process" by establishing four additional elements. <u>Tourtellotte v. Eli Lilly and Co.</u>, 636 Fed. Appx. 831, 849 (3d Cir. 2016) (quoting <u>Victor</u>, 4 A.3d at 140-41). Those elements are that: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." <u>Id</u>. Defendant's sole argument for summary judgment is that Plaintiff did not in fact request a reasonable accommodation for her disability.

There is no specific formula by which an employee correctly requests a reasonable accommodation. The request may be made orally or in writing, and the NJLAD does not require the employee to specifically use the words "reasonable accommodation:" the employee need only "clearly express[] a desire for assistance based on a disability, [and then] the employer is obliged to engage in an interactive process to attempt to fashion an appropriate reasonable accommodation." <u>Dennis v. County of Atlantic City</u>, 863 F. Supp. 2d 372, 380 (D.N.J. 2012) (citing <u>Boyce v. Lucent Technologies</u>, 2007 WL 1774267 (N.J. Super. Ct. App. Div. June 21, 2007)).

Plaintiff's Complaint claims that she expressed her need for accommodation or assistance in two ways: (1) by requesting an extended leave of absence beyond the two weeks she had taken at the time of her request; and (2) by requesting the ability to work from home part-time when her disability worsened.[4] Defendant argues that Plaintiff never made any such requests.

Turning to the first accommodation request, Defendant initially appears to argue that extended leave does not qualify as a reasonable accommodation at all.  (ECF No. 33-2 at 8-11). However, the NJLAD explicitly lists "leaves of absence" as an example of a "reasonable accommodation."  N.J. Admin. Code 13:13-2.5(b)(1)(ii).  Accordingly, Defendant's reliance on the holding to the contrary in Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135 (3d. Cir. 2004), is misplaced.  See Santiago v. Cnty. of Passaic, No. A-3599-06T1, 2009 WL 483159,

_____

[4] In their briefing, both parties further address an additional possible accommodation: an adjustment of Plaintiff's hours so that she could arrive at work earlier in the morning and leave earlier in the afternoon.  However, a review of the Amended Complaint reveals that Plaintiff did not plead any facts or claims regarding having made such a request.  "New theories of liability set forth in responsive papers to a motion for summary judgment are generally considered too late and thus, do not create genuine issue[s] of material fact to preclude summary judgment."  Cohen v. BH Media Group, Inc, 419 F. Supp. 3d 831, 861 n.10 (D.N.J. 2019).  Accordingly, while Plaintiff may raise it as a possible accommodation that would have allowed her to perform her job duties for other elements of her claims, the Court will not address this theory as part of its analysis of whether she requested an accommodation.

at *5-8, (N.J. Super. Ct. App. Div. Feb. 27, 2009) (describing legislative amendments overruling the Conoshenti holding).

Defendant then argues that Plaintiff did not in fact make any clear request for an extended leave.  In support of this argument, Defendant does not point the Court to any contradictory evidence, but rather to the case of Linton v. L'Oreal USA.  In Linton, the plaintiff missed several months of work with an injury, during which time he provided his employer with doctors' notes stating that he must stay on leave.  No. 06-5080 (JLL), 2009 WL 838766, at *1-2 (D.N.J. Mar. 27, 2009).  The court held that the notes, on their own, were insufficient to show a request for accommodation; instead, "[s]omething more is required of an employee . . . than merely apprising her employer that she is still injured to start the interactive process for seeking an accommodation; the employee must arguably seek assistance to survive summary judgment."  Id. at 6.

Were doctors' notes the sum of Plaintiff's evidence, the Court might agree that she has not met her burden.  However, in addition to doctors' notes and emails to Piontkowski expressly discussing her inability to work due to her disability, see (Pl. Exs. 17 and 19), Plaintiff also provides an email exchange between her and Piontkowski from February 13, 2018.  In her initial email, Plaintiff made explicit her desire to take extended leave to accommodate her disability:

28

Can you please advise me on what you need from me for my
current, extended leave, or what, if anything, I need to do
at this point, e.g. FMLA form, physician attestation?
Because I'm presently physically unable to work, I want to
make certain I'm following ARBDA and/or state/federal
requirements for extended leave or FMLA. (Pl. Ex. 21).

In response to this email, Piontkowski requested a return
to work date and told Plaintiff that "I am confirming that you
have no accrued time off left and we do not offer extended
leave. You are currently in an unpaid status." Id. Plaintiff
then requested information regarding FMLA leave again, stating
"I have no idea of the length of my absence until I see yet
another surgical specialist later this week. So I need the
information in case my absence is extended." Id.

At this stage, therefore, the record shows that Plaintiff
had exhausted her accrued time off and had made clear to ARBDA's
Director of Human Resources that she was not yet able to return
to work and was seeking information about extended leave.  The
Court finds that this exchange is sufficient to allow a
reasonable factfinder to find that Plaintiff had "clearly
expresse[d] a desire" for an accommodation for her disability.

Defendant next argues that "Plaintiff never made a request
of ARBDA to . . . work full time from home in order to
accommodate her medical condition." (ECF No. 42 at ¶ 50).  The
main evidence Defendant puts forth is the deposition testimony
of Haberkern and Dr. Hollander, who both repeatedly stated that

29

they understood Plaintiff's desire to "work[] from home . . .
did not have anything to do with her back condition. It was for
accommodating her for the traffic." (Pl. SOMF ¶ 12; Def. Ex. G
85:19-86:5); <u>see also</u> (Pl. SOMF ¶ 13; Def. Ex. G 55:18-56:5;
Def. Ex. E 152:23-153:18).

However, Defendant's own statement of facts claims
elsewhere that "ARBDA had been providing Plaintiff with
accommodations for months, such as . . . occasionally allow[ing]
her to work from home." (Def. SOMF ¶ 7). Defendant also
highlights testimony from ARBDA Partner Dr. Silver expressly
admitting that she knew of Plaintiff's worsening disability and
stating that ARBDA had allowed Plaintiff to work from home at
times as an accommodation for it. <u>Id</u>. at ¶ 9. As Defendant's
own evidence contradicts its argument, it has not met its burden
as movant of demonstrating the lack of any dispute of material
fact on this element.

Even if Defendant had met its burden, Plaintiff has
separately put forth sufficient evidence to avoid summary
judgment. First, she testified that in the fall of 2017, she
had "multiple conversations with Betty [Grimmett, ARBDA's
Practice Administrator,] about working from home as [her
disability] got progressively worse," and that Grimmett told her
it was fine for her to work from home. (Pl. Ex. 8 at 120:16-
121:1). Second, Piontkowski testified that she was aware that

"at times, [Plaintiff] stayed home and worked from home because of her health condition." (Def. Ex. H at 123:6-12). Finally, the evidence shows that at the time Defendant made the decision to forbid Plaintiff from working from home, its decisionmakers were aware of Plaintiff's disability and worsening condition: Haberkern acknowledged that by January he was aware of Plaintiff's condition and had seen her walking with a cane, (Pl. Ex. 9 at 47:22-48:17), and Dr. Hollander's testimony shows that she had reviewed Plaintiff's medical records, was aware of her worsening conditions, and had treated Plaintiff for her back pain. (Pl. Ex. 13 at 72:15-19, 74:13-75:24; 206:21-207:3).

The Court finds that this evidence is sufficient to allow a reasonable factfinder to determine that Plaintiff had "clearly express[ed] a desire" for accommodation or assistance for her disability. Dennis, 863 F.Supp.2d at 380. Therefore, Defendant's motion for summary judgment on Plaintiff's NJLAD failure to accommodate claim will be denied.

### c. NJLAD Retaliation Claim

Finally, Plaintiff alleges that ARBDA violated the NJLAD by retaliating against her "for requesting a reasonable accommodation for her disability." (ECF No. 3 at ¶ 62). Plaintiff's NJLAD retaliation claim is again governed by the familiar McDonnell Douglas framework. Tourtellotte, 636 Fed. Appx. at 841-42 (citing Viscik v. Fowler Equip. Co., 800 A.2d

826, 833 (N.J. 2002)).  To state a *prima facie* case for retaliation under the NJLAD, Plaintiff must show that she (1) engaged in protected activity, (2) suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action.  Nuness v. Simon & Schuster, Inc, 221 F. Supp. 3d 596, 605 (D.N.J. 2016).

Defendant's only arguments for summary judgment on this claim are that Plaintiff cannot demonstrate causation, and that Defendant had a legitimate, non-retaliatory reason for terminating her.  As the Court has already found above, Plaintiff has put forth sufficient evidence to demonstrate material factual disputes regarding both causation and Defendant's proffered reason being pretext.  Accordingly, the Court will also deny Defendant's motion for summary judgment on Plaintiff's NJLAD retaliation claim.

## Conclusion

For the reasons expressed above, Defendant's motion for summary judgment [ECF No. 33] will be denied.

An appropriate Order will be entered.


Date: September 29, 2020                s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.